NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NEW JERSEY SAND HILL BAND OF LENAPE
AND CHEROKEE INDIANS, *et al.*,

        *Plaintiffs*,

v.

STATE OF NEW JERSEY, *et al.*,

        *Defendants*.

Civil Action No. 09-683 (KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

      The plaintiffs in this case, the New Jersey Sand Hill Band of Lenape and Cherokee Indians and its representative Ronald S. Holloway (collectively, "plaintiffs"), seek redress for the alleged conversion and misappropriation of their land and other property rights. In their Third Amended Complaint ("TAC"), plaintiffs seek damages and various forms of equitable relief against the states of New Jersey, New York, and Pennsylvania (the "State Defendants"), as well as the United States government. [D.E. 187.]

**I. Factual and Procedural Background**

      Because the Court writes only for the parties, and because the factual background of this case was previously recounted in an opinion filed on June 30, 2010 [D.E. 175], the Court only briefly states the facts and procedural evolution of the case, focusing on the TAC.

      This case has been energetically litigated for more than two years. Plaintiffs filed their initial complaint on February 17, 2009. [D.E. 1.] They filed an amended complaint six days later [D.E. 2] and subsequently applied for a temporary restraining order enjoining enforcement

1

of certain New Jersey laws and regulations related to their claims. [D.E. 5.] The Court denied the application on March 24, 2009. [D.E. 14.] Plaintiffs filed a partial amendment to the amended complaint on April 20, 2009 [D.E. 66], and then filed a complete Second Amended Complaint ("SAC") on May 22, 2009. [D.E. 88.] The SAC named as defendants the State of New Jersey, all 21 New Jersey counties, various state and county officials, and the New Jersey Commission on Indian Affairs. (SAC ¶¶ 21–47.) The defendants moved to dismiss the SAC [D.E. 97, 123], and the Court granted the motion in its June 30 opinion and accompanying order. Thereafter, plaintiffs filed the TAC, which again named the State of New Jersey a defendant, and for the first time pleaded claims against the United States[1] and the states of New York and Pennsylvania. The TAC did not name any of the individual defendants or the county defendants.

The TAC asserts four causes of action, one against each named defendant.[2] Count 1 alleges that New Jersey defrauded plaintiffs of their land by means of the Treaty of Easton in 1758, specifically by plying plaintiffs' ancestors with alcohol before they signed the treaty. (TAC ¶¶ 41–47.) Count 2 alleges that Pennsylvania's "Walking Purchase" in 1737 was also fraudulent. (*Id.* ¶¶ 52–55.) Count 3 claims that "New York did coerce, trick, and/or force" plaintiffs into selling the island of Manhattan for $24 in 1626. (*Id.* ¶¶ 60–64.) Finally, Count 4 claims that the United States, as a successor in interest to the Dutch and British crowns—which actually carried out the above transactions, knowingly consented to the transactions and the State Defendants' unlawful occupations of land that rightfully belonged to plaintiffs' forebears. (*Id.* ¶¶ 69–75.) As a result of these actions, plaintiffs claim, the defendants have (1) enjoyed the benefits of their unlawful occupations—including monies from taxes, interest, fees, fines,

---

[1] The SAC listed the United States in its caption, but did not plead any claims against the United States and was never served on the United States.
[2] The TAC also pleads a fifth count against John and Jane Does and a sixth count that restates in general terms the allegations levied against the named defendants. (TAC ¶¶ 79–87.)

2

licenses, tolls, and profits (*Id.* ¶¶ 48, 56, 65, 76); (2) levied unconstitutional taxes (*Id.* ¶¶ 49, 57, 66, 77); and (3) deprived plaintiffs of their ancestral homelands and sovereignty and forced plaintiffs to renounce their religion and culture. (*Id.* ¶¶ 50, 58, 67, 78.) Plaintiffs seek several forms of relief, including $27.6 billion in damages, the return of all illegally occupied lands and accompanying water rights, and various other species of equitable relief. (*Id.* Prayer for Relief.)

The Court's dismissal of the SAC and the subsequent filing of the TAC led to a flurry of motion practice. Plaintiffs filed motions to (1) disqualify/recuse Judges Hayden and Schwartz, (2) set aside the Court's June 30, 2010 order, and (3) enter a default judgment against the United States. Defendants filed motions to dismiss. The Court addresses each in turn.

## II. Plaintiffs' Motions to Disqualify/Recuse Judges Hayden and Shwartz and to Set Aside the Court's June 30, 2010 Order[3]

Plaintiffs move for the disqualification or recusal of the undersigned and U.S. Magistrate Judge Patty Shwartz. [D.E. 183.] The certification attached to the motion invokes the disqualification standards codified in 28 U.S.C. § 455(a) and (b)(1). (Richards Recusal Certif. ¶¶ 47–52.) Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," while § 455(b)(1) states that a judge shall disqualify herself "[w]here [s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Another statute, 28 U.S.C. § 144, states that a judge must recuse herself when a party "files a timely and sufficient affidavit" that the judge has a personal bias or prejudice against him. Under any standard, however, "a party's displeasure with legal

---

[3] The docket reflects that plaintiffs purported to file four motions: their "First MOTION to Disqualify Judge Hayden and Shwartz, First MOTION to Reassign Case to unbiased judges, First MOTION for Recusal of Judge Hayden and Shwartz, [and] First MOTION to Set Aside Judgment of 6-30-10." [D.E. 183.] The Court will treat these filings as two separate motions: one to disqualify the undersigned and U.S. Magistrate Patty Shwartz and one seeking relief from the June 30, 2010 order under Fed. R. Civ. P. 60(b)(4).

3

rulings does not form an adequate basis for recusal." *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000). Plaintiffs' certification conveys displeasure with the Court's rulings and nothing more. It states no facts that suggest that either the undersigned or Magistrate Judge Shwartz have any bias or prejudice concerning any of the parties, or that either judge's impartiality might reasonably be questioned. Therefore, no cause exists to disqualify either the undersigned or Judge Shwartz, and plaintiffs' motion is denied.

Plaintiffs also seek to "set aside" the Court's order of June 30, 2010, which dismissed their SAC. [D.E. 176.] The motion states that the order should be deemed void under Fed. R. Civ. P. 60(b)(4), and asks the Court to reinstate plaintiffs' SAC. (Richards Recusal Certif. ¶¶ 45–46, 53.) The Court notes that simultaneous to the motion, plaintiffs filed a separate motion that also sought to reinstate the SAC [D.E. 182] and was later withdrawn. [D.E. 233, 235.] Because the only relief plaintiffs seek from the June 30, 2010, order is to reinstate the SAC, their decision to withdraw the motion to reinstate renders their motion to set aside the June 30, 2010 order moot. Their quest for relief would have failed anyway. The Third Circuit has stated that a judgment or order may be void if the rendering court lacked jurisdiction over the subject matter or the parties or acted outside the powers granted to it by law. *Marshall v. Bd. of Educ., Bergenfield, N. J.*, 575 F.2d 417, 422 (3d Cir. 1978) (internal citations and quotations omitted). However, a judgment or order is not void merely because it is erroneous. *Id.* Plaintiffs make no pretense to argue that the Court was without power to issue the June 30, 2010, order. They simply disagree with the outcome. Therefore, relief under Rule 60(b)(4) is inappropriate.

**III. Plaintiffs' Motion for Default Judgment Against the United States**

Plaintiffs also move for default judgment against the United States. [D.E. 234.] In this motion, plaintiffs contend that because the Court set an August 13, 2010, deadline for defendants

4

to respond to the TAC [D.E. 178], and the United States did not file its answer by that time, a default judgment is proper. The United States, on the other hand, maintains that it was not properly served, that the time for it to respond had not expired when plaintiffs filed the instant motion, and that plaintiffs have not established their claims by sufficient evidence. [D.E. 236.]

First, Fed. R. Civ. P. 4(i) sets out the proper procedure for serving the United States government. The Rule requires the serving party to "deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought" and to "send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C." Fed. R. Civ. P. 4(i)(1). The docket reflects that on July 21, 2010, plaintiffs delivered a copy of the summons and TAC to the Attorney General, but did not do the same for the U.S. Attorney for the District of New Jersey. [D.E. 219.] Notably, plaintiffs did effect proper service on the U.S. Attorney for the District of New Jersey [D.E. 240] four days after the United States filed its opposition to this motion. [D.E. 236.] But, as of the time plaintiffs filed their motion for default judgment, they had not properly served the United States.

Second, Fed. R. Civ. P. 12(a)(2) dictates the time within which the United States must answer a complaint. To wit, "[t]he United States . . . must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney." Therefore, even if plaintiffs had effected proper service on July 21, the United States still would have had until September 20 to answer. Plaintiffs argue that Judge Shwartz's order setting deadlines for filing the TAC and the defendants' answers to it obligated the United States to answer by August 13. [D.E. 234.] However, the United States was not a party to this action when Judge Shwartz filed her order and therefore could not be bound by it. *See Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999); 11A Charles A.

5

Wright, et al., Federal Practice and Procedure § 2956, at 335 (2d ed. 1995) ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired in personam jurisdiction."). In any event, the United States had no duty to respond to the TAC until plaintiffs properly served it on August 31. The United States timely filed a motion to dismiss in lieu of an answer on November 1. [D.E. 245.]

Because the United States was not properly served and was not out of time when plaintiffs moved for default judgment, the Court need not address whether plaintiffs established their claim by sufficient evidence. The motion for default judgment is denied.

## IV. The United States' Motion to Dismiss

In lieu of an answer, the United States filed a motion to dismiss [D.E. 245] on the grounds that the Court lacks subject matter jurisdiction to hear plaintiffs' claims.[4] *See* Fed. R. Civ. P. 12(b)(1). According to the United States, plaintiffs have failed to identify any statute under which the federal government has consented to be sued on the plaintiffs' claims. (United States Motion to Dismiss Moving Br. at 9.)

"[T]he United States is immune from suit unless it consents to be sued," *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)), and because sovereign immunity is jurisdictional, a waiver is a prerequisite to a Court's power to hear claims against the government. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1085 (3d Cir. 1992). For a waiver to be effective, it must be "unequivocally expressed" in a statute; in addition, any waiver "must be construed strictly in favor of the sovereign." *Dolan v. U.S. Postal Serv.*, 377 F.3d 285, 287 (3d Cir. 2004) (quoting *United States v. Bein*, 214 F.3d 408, 412 (3d Cir.2000)), *rev'd on other grounds*, 546 U.S. 481 (2006). Furthermore, the party

---

[4] The United States also contends that plaintiffs' claims are non-justiciable and are barred by laches and the relevant statutes of limitations. (United States Motion to Dismiss Moving Br. at 14–24.) Because the Court finds that the United States is immune to suit, *see infra*, it need not consider any of these grounds.

6

bringing claims against the government "bears the burden of showing an unequivocal waiver of immunity." *Global Fin. Corp. v. United States*, 67 F. App'x 740, 742 (3d Cir. 2003) (citations omitted).

In this case, plaintiffs point to six statutes that they claim constitute waivers of sovereign immunity and give this Court subject matter jurisdiction: 28 U.S.C. §§ 1331, 1332, 1353, 1362, 1366,[5] and 1367. (TAC ¶ 2.)

Sections 1331, 1332, and 1367 are general jurisdictional statutes. Under § 1331, federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, this grant of jurisdiction does not waive the federal government's immunity to suit. *Clinton County Comm'rs v. EPA*, 116 F.3d 1018, 1021 (3d Cir. 1997); *see also Mack v. United States*, 814 F.2d 120, 122 (2d Cir. 1987) ("Section 1331 is in no way a general waiver of sovereign immunity. Such a waiver, if it exists at all, must be sought in the statute giving rise to the cause of action." (internal quotation and citation omitted)). Nor does a waiver arise out of § 1332[6] (diversity jurisdiction) or § 1367 (supplemental jurisdiction). *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 934 (9th Cir. 2009); *Nishibayashi v. England*, 360 F. Supp. 2d 1095, 1101 (D. Hawaii 2005); *Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs*, 175 F. Supp. 2d 755, 775 n.11 (E.D. Pa. 2001); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 2 F.Supp.2d 516, 521–522 (S.D.N.Y. 1998).

Section 1362 gives federal courts jurisdiction over "all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior,

---

[5] Section 1366 states that "[f]or the purposes of this chapter, references to laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia." This provision is clearly inapplicable to this action.

[6] Even if § 1332 did constitute a waiver of sovereign immunity, the Court could not have diversity jurisdiction over an action between the plaintiffs and the United States because "the United States is not a citizen for diversity purposes." *Gen. Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 703 (7th Cir. 1991).

wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." The purpose of the statute was to "eliminate the $10,000 jurisdictional requirement of 28 U.S.C. § 1331" for "federal-question actions brought by an Indian tribe or band." *Scholder v. United States*, 428 F.2d 1123, 1125 (9th Cir. 1970). Nevertheless, it does not constitute a waiver of sovereign immunity. *Id.* ("Nothing on the face of section 1362 indicates an intention by Congress to waive sovereign immunity, and we know nothing in its legislative history to suggest such a purpose.").

One statute cited by plaintiffs—§ 1353[7]—does act as a waiver of sovereign immunity, but it is a limited one. *Scholder*, 428 F.2d at 1126. Section 1353 states that "district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." An allotment is "a selection of specific land awarded to an individual allottee from a common holding." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 142 (1972). The consent to suit embodied in the statute is therefore confined to "certain kinds of suits designed to protect or preserve an allotment once issued." *Scholder*, 428 F.2d at 1126; *United States v. Pierce*, 235 F.2d 885, 889 (9th Cir. 1956). It is not a means "to determine title or possession to all Indian lands." *Brooks v. Nez Perce County*, 394 F.Supp. 869, 873 (D. Idaho 1975). In this case, plaintiffs do not contend that they are entitled to an allotment under an act of Congress or treaty, nor do they contend that the United States is infringing on their interests or rights in an allotment they already hold. Therefore, § 1353's limited waiver does not encompass plaintiffs' claims and does not give the Court power to entertain this action.

---

[7] Section 1353 is a recodification of 25 U.S.C. § 345. Courts have analyzed both statutes interchangeably. *See, e.g.*, *Scholder*, 428 F.2d at 1126 n.2.

Though it goes unmentioned by plaintiffs, the Tucker Act also provides limited consent to suit. There are three relevant parts of the Act: 28 U.S.C. §§ 1346(a)(2), 1491(a)(1), and 1505. Section 1346(a)(2), also called the Little Tucker Act, vests the district courts and the U.S. Court of Federal Claims with concurrent jurisdiction over non-tort claims against the United States that do not exceed $10,000; it waives the government's sovereign immunity to the same extent. *Chabal v. Reagan*, 822 F.2d 349, 353 (3d Cir. 1987). Section 1491(a)(1), known as the Big Tucker Act, serves as a complement to § 1346; it gives the Court of Federal Claims exclusive jurisdiction over non-tort claims against the United States that exceed $10,000, and it also constitutes a limited waiver. *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008). Finally, § 1505, called the Indian Tucker Act, gives the Court of Federal Claims exclusive jurisdiction over all non-tort claims brought by Native American tribes that accrue after August 13, 1946. *United States v. Navajo Nation*, 129 S. Ct. 1547, 1551 (2009).

None of the Tucker Act provisions set forth a sufficient waiver of immunity for plaintiffs to bring their claims in this Court. First, the waiver provided by § 1346 does not extend to damages claims that exceed $10,000, *CNA v. United States*, 535 F.3d 132, 143 n.5 (3d Cir. 2008) ("Subsection 1346(a)(2) sets a damages ceiling of $10,000 in its particular waiver of sovereign immunity."), nor does it cover claims for declaratory or injunctive relief, *Richardson v. Morris*, 409 U.S. 464, 465 (1973). In this case, plaintiffs seek $27.6 billion in damages and various forms of equitable relief, most notably large tracts of land and water rights. (TAC Prayer for Relief.) None of this relief fits within the § 1346 waiver. In addition, §§ 1491 and 1505 grant exclusive jurisdiction to the Court of Federal Claims; therefore, the waivers articulated in those sections are limited to actions brought in that court. *Burg v. U.S. Dep't of Health and Human Services*, 387 F. App'x 237, 240 (3d Cir. 2010); *McGuire*, 550 F.3d at 911; *see also Rosebud*

*Sioux Tribe v. United States*, 75 Fed. Cl. 15, 26 (2007). They do not extend to actions commenced in this Court.

In sum, neither the Tucker Act nor any of the statutes cited by plaintiffs unequivocally expresses a waiver of the United States' sovereign immunity. Therefore, this Court lacks subject jurisdiction over the plaintiffs' claims against the United States, whose motion to dismiss is granted.

**V. The State Defendants' Motions to Dismiss**

The State Defendants all move to dismiss [D.E. 221, 229, 230] on several grounds. Principally, they contend that the Eleventh Amendment to the U.S. Constitution bars plaintiffs' claims.[8] (N.J. Reply Br. at 3; N.Y. Moving Br. at 3–9; Pa. Moving Br. at 3–5.)

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., Amend. XI. The Eleventh Amendment shields unconsenting states, state agencies, and state officers sued in their official capacities from lawsuits brought in federal courts by private parties, including Indian tribes and their members. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 268–69 (1997) ("Under well-established principles, the Coeur d'Alene Tribe, and, *a fortiori*, its members, are subject to the Eleventh Amendment."); *Blatchford v. Native Village of Noatak and Circle Village*, 501 U.S. 775, 782 (1991); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Nevertheless, "[a] State's immunity from suit is not absolute." *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 195 (3d Cir. 2008). "Eleventh Amendment immunity is subject to three exceptions: (1) congressional abrogation; (2) state waiver; and (3) suits against

---

[8] The remaining grounds for dismissal proffered by the State Defendants are catalogued in their briefs (N.J. Reply Br. at i; N.Y. Moving Br. at i; Pa. Moving Br. at i.) and need not be addressed in this opinion in light of the fact that the Court finds that the State Defendants are immune to suit, *see infra*.

individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). In addition, individual state officers may be sued for damages in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). Because no individual officers are named in the TAC, only the first and second exceptions are relevant to this motion to dismiss. (TAC ¶¶ 6–10.)

### A. Congressional Abrogation

In limited circumstances, Congress may "abrogate sovereign immunity and authorize suits against the states." *MCI*, 271 F.2d at 503. For example, Congress may abrogate immunity when exercising its "congressional power under § 5 of the Fourteenth Amendment to enforce the provisions of that amendment." *Id.* Congress may not, however, "abrogate state sovereign immunity when a statute is passed pursuant to its Article I powers, such as the Commerce Clause[.]" *Id.*; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 65 (1996).

In the face of this clear statement of the law, plaintiffs steadfastly maintain that the Indian Commerce Clause, of its own force, abrogates state immunity. (Pls.' Opp'n to State Motions to Dismiss at 23.) Moreover, plaintiffs suggest that "this [C]ourt has chosen to err on the side of the defendant (instead of viewing this issue in the light most favorable to the plaintiff) in the face of conflicting decisions regarding whether or not Congress has the power under Article I to abrogate state immunity." (*Id.*) First, the Court is not obligated to accede to plaintiffs' view of the law. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."). Second, and more importantly, there is no conflict; the Supreme Court has clearly stated that Congress has no power under Article I to abrogate state sovereign immunity. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 727 (2003) ("Congress may not abrogate the

11

States' sovereign immunity pursuant to its Article I power over commerce.") (citing *Seminole Tribe*, 517 U.S. 44).

Plaintiffs also assert that both the Supremacy Clause and 28 U.S.C. § 1362—which, as stated above, endows the federal courts with jurisdiction over cases brought by Native American tribes "under the Constitution, laws, or treaties of the United States"—abrogate state sovereign immunity. (Pls.' Opp'n to State Motions to Dismiss at 27–28.) In fact, neither does. *See In re Mitchell*, 209 F.3d 1111, 1121 (9th Cir. 2000), *overruled in part on other grounds*, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) ("[T]he Supremacy Clause dictates that federal law trumps state law, but does not itself abrogate state sovereign immunity in federal court: although a state may be bound by federal law, a private party is not entitled to utilize a federal court to determine a state's obligations."); *Alden v. Maine*, 527 U.S. 706, 732 (1999) ("The Constitution, by delegating to Congress the power to establish the supreme law of the land . . . does not foreclose a State from asserting immunity to claims arising under federal law merely because that law derives not from the State itself but from the national power."); *Blatchford*, 501 U.S. at 788 ("We conclude that neither under the current standard of *Dellmuth* nor under any standard in effect at the time of *Parden* was § 1362 an abrogation of state sovereign immunity.").

Because plaintiffs have not pointed to a valid abrogation of state sovereign immunity under § 5 of the Fourteenth Amendment, this Court can only entertain the claims against the State Defendants if they have consented to suit.

### B. Waiver

A state may voluntarily consent to suit and thereby waive sovereign immunity. *MCI*, 271 F.3d at 503. The "test for determining voluntariness is a stringent one" and requires that the state "either . . . voluntarily invoke our jurisdiction by bringing suit . . . or . . . make a clear declaration

that it intends to submit itself to our jurisdiction." *Id.* (citations and internal quotation marks omitted). Voluntariness requires the "'intentional relinquishment or abandonment of a known right or privilege.'" *Id.* (quoting *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 681–82 (1999).

Plaintiffs assert that "the states waived any arguable immunity when they ratified the U.S. Constitution." (Pls.' Opp'n to State Motions to Dismiss at 20.) This statement is contradicted by 120 years of Eleventh Amendment jurisprudence. The Supreme Court has long recognized that the Eleventh Amendment did not imbue the states with an immunity that did not previously exist, but merely reaffirmed the inherent immunity states have always possessed. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 & n.7 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'" (quoting *Hans v. Louisiana*, 134 U.S. 1, 11–15 (1890) and citing two dozen cases restating the proposition)). The State Defendants did not initiate this litigation and have not otherwise waived their Eleventh Amendment immunity. The claims against them are dismissed.

**VI. Conclusion**

For the foregoing reasons, the Court denies plaintiffs' motions to disqualify/recuse Judges Hayden and Shwartz, denies plaintiffs' motion to set aside the June 30, 2010, order, denies plaintiffs' motion for default judgment against the United States, and grants the defendants' motions to dismiss the Third Amended Complaint.

|  |  |
|---|---|
| March 31, 2011 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J. |